Bell, J.
 

 The sole question
 
 for
 
 determination is whether the decision of the Board of Tax Appeals is reasonable and lawful. The appellant lays great stress upon his claim that this was an annuity contract, and that the Board of Tax Appeals treated it as an insurance policy and by reason thereof came to the conclusion which was unreasonable and unlawful.
 

 The contract here in question is an instalment refund life annuity as between the company and-the annuitant, which terminated on the death of the annuitant.
 

 At the time the contract was executed, the annuitant was in her 59th year. Had she lived 18 years or more after the date of the contract, the company would have paid to her sums totaling more than the amount of the single premium of $20,000, and upon her death the contract would have been at an end. In order to provide for the contingency of annuitant’s death prior to the time the total sum of the annuity payments equaled the amount of the single premium, the company agreed, upon the happening of such contingency, to pay the difference between those amounts either in instalments or in gross. Payment was to be made to Joan McNally, if living, in
 
 monthly instalments of
 
 
 *446
 

 $92.80 each
 
 until such difference was consumed. If Joan was not living at the time of annuitant’s death, then the company was to pay the difference in
 
 one lump sum
 
 to the designated party or parties. Joan McNally was living at the time of the death of annuitant.
 

 Our precise question is .whether the payments to Joan’s trustee constitute an “annuity” taxable under the provisions of the intangible personal property tax statutes of Ohio.
 

 To formulate an all-inclusive definition of the word “annuity” has proved perplexing to both courts and text writers. Numerous definitions of the word may be found in the books. However, this court, in the case of
 
 Chisholm
 
 v.
 
 Shields, Treas.,
 
 67 Ohio St., 374, 66 N. E., 93, defined the word as follows:
 

 “An annuity, as understood in common parlance, is an obligation by a person or company to pay to the annuitant a certain sum of money at stated times during life or a specified number of years, in consideration of a gross sum paid for such obligation, and this in substance is the kind of annuity covered by said sections of the statute.” (Tax statutes.)
 

 Definitions of similar import may he found in Ballentine’s Law Dictionary, American Jurisprudence, Corpus Juris and Oxford English Dictionary.
 

 The payments to appellee do not constitute an annuity within any definition of that word which has come to our attention.
 

 The contract, as between the contracting parties, was an annuity contract for the life of the annuitant. As to appellee it was not.
 

 She did not enter into any contract with the company, either express or implied, providing for any payments to he made by her. The company did not agree to pay to her, for her life or for a specified number of years, a certain sum of money. The only right of appellee, if living at the time of the death of annui
 
 *447
 
 taut, was to receive the difference, if any, between the total of the sums paid the annuitant during her life and the sum of $20,000, the amount of the single premium paid by annuitant to the company.
 

 Section 5323, General Code, defining taxable investments, reads in part as follows:
 

 “Annuities, royalties and other contractual obligations for the periodical payment of money and all contractual and other incorporeal rights of a pecuniary nature whatsoever from which income is or may be derived, however evidenced * *
 

 .We think one simple hypothesis will demonstrate clearly that the payments to appellee do not constitute an annuity as that term is used in Section 5323, General Code.
 

 Let us assume that the annuitant had lived for 17 years and 11 months after the date of the contract. The company would have paid to her the sum of $19,952 and under the contract would have been obligated to pay the appellee the sum of $48 only. In such event would the sum so paid to appellee constitute an annuity? We think not. Nor do we think the fact that annuitant lived only three years and four months after the contract date changes the situation. In our view. of the matter, upon the death of the annuitant at any time before the amount of payments to her equaled the amount of the single premium, the difference between such amounts became a debt owing by the company and payable in monthly instalments to appellee if appellee was then living, or if not, then to appellee’s living children, if any, share and share alike, or to the executors, administrators or assigns of the annuitant, in a single sum.-
 

 The contract was for the mutual benefit of the con- ■ tracting parties and for the benefit of a third party or parties in the event of the happening of a stated contingency.
 

 
 *448
 
 The Board of Tax Appeals concluded that “if the unused portion of the single premium paid for the policy had been payable to the beneficiary in one sum it would not have been taxable, and the Legislature has shown no clear intention to tax periodical payments thereof, as provided in the policy and which yield no income-. ’ ’
 

 A statute which authorizes the levying of a tax will be construed strictly against the taxing authority. The intention to tax must be clearly expressed, and any doubt as to such intention will be resolved in favor of the taxpayer.
 

 With that rule of construction in mind, we conclude that the decision of the Board of Tax Appeals is reasonable and lawful and hereby is affirmed.
 

 Decision affirmed.
 

 Weygandt, C. J., Zimmerman, Williams, Turner, Matthias and Hart, JJ., concur.